**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TRUIST BANK,** | § | |
| *Plaintiff* | § | |
| **v.** | § | **CIVIL ACTION NO.:_____** |
| | § | |
| **SERVELITE INC., SERVELITE** | § | |
| **SOLUTIONS LLC, SERVELITE** | § | |
| **COMMUNICATIONS INC.,** | § | |
| **DALARAN LLC, STORMWIND LLC,** | § | |
| **SERVEDARK INC. d/b/a** | § | |
| **SERVEDARK RACING, and** | § | |
| **SEBASTIAN S. ROBLES** | | |
| *Defendants*. | | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff Truist Bank, a North Carolina banking corporation ("Truist" or "Plaintiff"), files this *Original Complaint* against defendants Servelite Inc., Servelite Solutions LLC, Servelite Communications Inc., Dalaran LLC, Stormwind LLC, Servedark Inc. *d/b/a* Servedark Racing and Sebastian S. Robles, and alleges as follows:

<u>**Introduction**</u>

1.      Plaintiff Truist Bank ("Truist" or "Plaintiff") brings this action against borrowers Servelite Inc, Servelite Solutions LLC, Servelite Communications Inc, Stormwind LLC, Dalaran LLC (collectively, the "Borrowers"), Servedark Inc. *d/b/a* Servedark Racing ("Servedark"), and against individual guarantor Sebastian S. Robles ("Robles," and together with Servedark and Borrowers, the "Defendants"), for breach of contract and breach of guaranty.

2.      This Complaint arises from a multi-faceted commercial and private wealth banking relationship among Truist and Defendants involving multiple credit facilities, including (a) fixed-rate term loans documented by separate Promissory Notes and related security documents, (b) an equipment financing relationship, (c) a $13,000,000 revolving line of credit, (d) a "Private Wealth

1

Management" relationship, and (e) commercial credit card accounts, each governed by the loan documents recited in further detail below.

3.  Each of the Borrowers jointly and severally promised to repay the indebtedness owing to Truist under each loan. Truist's guarantor, Robles, personally and unconditionally guaranteed the full and punctual payment and performance of all of the Borrowers' obligations under the loan documents.

4.  With regard to the commercial credit card accounts, Dalaran LLC, Servedark Inc., and Servelite Inc. promised repayment of all amounts due on the respective credit card accounts on a monthly basis.

5.  Defendants have failed and refused to perform their obligations and have defaulted under the promissory notes and guaranties. Despite written notices of default and demands to cure and pay, Defendants have not cured the defaults or paid the amounts due and owing.

**Parties**

6.  Plaintiff Truist Bank is a state-chartered banking corporation incorporated in North Carolina whose main office and principal place of business is located in Mecklenburg County, North Carolina.

7.  Defendant Servelite Inc. is a Texas corporation which may be served through its registered agent Sebastian Robles at 20813 Park Row, Katy, Texas 77449.

8.  Defendant Servelite Solutions LLC is a Texas limited liability company which may be served through its registered agent Sebastian Robles at 19728 Saums Rd., Apt. 184, Katy, Texas 77449.

9.      Defendant Servelite Communications Inc. is a Texas corporation which may be served through its registered agent Sebastian Robles at 19728 Saums Rd., Apt. 184, Katy, Texas 77449.

10.     Defendant Stormwind LLC is a Texas limited liability company which may be served through its registered agent Sebastian Robles at 20813 Park Row, Katy, Texas 77449.

11.     Defendant Dalaran LLC is a Texas limited liability company which may be served through its registered agent Sebastian Robles at 20423 Drakewood Dr., Katy, Texas 77449.

12.     Defendant Servedark Inc. *d/b/a* Servedark Racing is a Wyoming corporation registered to transact business in Texas, which may be served through its registered agent Anderson Advisors at 440 Louisiana St., Suite 952, Houston, Texas 77002.

13.     Defendant Sebastian S. Robles is an individual who may be served at 2415 Legends Way, Katy, Texas 77493-3014, or wherever he may be found.

## Jurisdiction

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Truist and Defendants and the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs.

15.     The citizenship of each Defendant is as follows:

   a. Defendant Servelite Inc. is a Texas corporation with its principal place of business located in Harris County, Texas.  Therefore, Servelite Inc. is a citizen of Texas.

   b. Defendant Servelite Solutions LLC is a limited liability company organized under the laws of the State of Texas.  Its members are Sebastian Robles, a

3

domiciliary and citizen of Texas, and John Simmons, a domiciliary and citizen of Texas.  Therefore, Servelite Solutions LLC is a citizen of Texas.[1]

c.  Defendant Servelite Communications Inc. is a Texas corporation with its principal place of business located in Harris County, Texas.  Therefore, Servelite Inc. is a citizen of Texas.

d.  Defendant Stormwind LLC is a limited liability company organized under the laws of the State of Texas.  Its members are Sebastian Robles, a domiciliary and citizen of Texas, and Juan Pablo Martinez, a domiciliary and citizen of Texas.  Therefore, Stormwind LLC is a citizen of Texas.

e.  Defendant Dalaran LLC is a limited liability company organized under the laws of the State of Texas.  Its sole member and director is Sebastian Robles, a domiciliary and citizen of Texas.  Therefore, Dalaran LLC is a citizen of Texas.

f.  Defendant Servedark Inc. *d/b/a* Servedark Racing is a Wyoming corporation with its principal place of business located in Laramie County, Wyoming.  Therefore, Servedark Inc. is a citizen of Wyoming.

g.  Defendant Sebastian S. Robles is a domiciliary and citizen of the State of Texas.

16.  No Defendants are citizens of North Carolina.

17.  Plaintiff Truist Bank is a state-chartered banking corporation incorporated in North Carolina whose main office and principal place of business is located in Mecklenburg County, North Carolina, and is therefore a citizen only of North Carolina.  *See* 28 U.S.C. § 1332(c)(1).

---

[1] "[T]he citizenship of a LLC is determined by the citizenship of all of its members."  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

18.    The amount due and owing from the Defendants to Truist exceeds $26,000,000.00.

## Venue

19.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. See 28 U.S.C. § 1391(b)(2).

## Factual Background

20.    On December 5, 2023, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $1,902,000.00, together with an associated Business Loan Agreement of the same date and related security agreements and notices (the "December 2023 Equipment Loan").  The December 2023 Promissory Note is attached as **Exhibit 1** and incorporated herein by reference.

21.    On March 8, 2024, Dalaran LLC executed and delivered to Truist a Commercial Card Client Acceptance Form, along with related Incentive Addendum and Commercial Card Terms and Conditions, in which Truist extended a rotating line of credit in the maximum amount of $1,000,000.00 to Dalaran LLC ("**Dalaran Card**").  The Dalaran Card agreement and related documentation are attached as **Exhibit 2** and incorporated herein by reference.

22.    Also on March 8, 2024, Servelite Inc. executed and delivered to Truist a Commercial Card Client Acceptance Form, along with related Incentive Addendum and Commercial Card Terms and Conditions, in which Truist extended a rotating line of credit in the maximum amount of $500,000.00 to Servelite Inc. ("**Servelite Card**").  The Servelite Card agreement and related documentation are attached as **Exhibit 3** and incorporated herein by reference.

23.     On April 1, 2024, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $1,098,610.00, together with an associated Business Loan Agreement and Commercial Security Agreement executed by Servelite Solutions LLC (the "April 2024 Equipment Loan").  The April 1, 2024 Promissory Note is attached as **Exhibit 4** and incorporated herein by reference.

24.     On April 24, 2024, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $1,998,410.00, together with an associated Business Loan Agreement and Commercial Security Agreement executed by Servelite Solutions LLC (the "April 2024 Loan").  The April 24, 2024 Promissory Note is attached as **Exhibit 5** and incorporated herein by reference.

25.     On June 26, 2024, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $814,228.35 secured by, among other collateral, a 2024 Lamborghini Revuelto and related collateral documents (the "June 2024 Vehicle Loan").  The June 2024 Promissory Note is attached as **Exhibit 6** and incorporated herein by reference.

26.     On July 11, 2024, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $2,628,075.00 with associated security documents (the "July 2024 Term Loan").  The July 2024 Promissory Note is attached as **Exhibit 7** and incorporated herein by reference.

27.     On September 10, 2024, Servedark executed and delivered to Truist a Commercial Card Client Acceptance Form, along with related Incentive Addendum and Commercial Card Terms and Conditions, in which Truist extended a rotating line of credit in the maximum amount of $550,000.00 to Servedark ("**Servedark Card**" and collectively with the Dalaran Card and

Servelite Card, the "**Card Agreements**").    The Servedark Card agreement and related documentation are attached as **Exhibit 8** and incorporated herein by reference.

28.    On September 18, 2024, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $3,302,815.00 with related security agreements (the "September 2024 Equipment Loan").  The September 18, 2024 Promissory Note is attached as **Exhibit 9** and incorporated herein by reference.

29.    On November 1, 2024, the Borrowers executed and delivered to Truist a Promissory Note in the original principal amount of $696,030.00 with related security agreements (the "November 2024 Equipment Loan").  The November 2024 Promissory Note is attached as **Exhibit 10** and incorporated herein by reference.

30.    On September 10, 2024, Truist extended to the Borrowers a $13,000,000.00 revolving line of credit pursuant to a Promissory Note of that date, together with a Term SOFR Addendum and related collateral and guaranty documents (the "$13 Million Line of Credit").  The September 10, 2024 Promissory Note is attached as **Exhibit 11** and incorporated herein by reference.

31.    On September 10, 2025, the Borrowers and Truist executed a Change in Terms Agreement modifying the $13 Million Line of Credit, including, among other things, extending the maturity date to December 10, 2025, and implementing interest tied to Term SOFR (the "September 10, 2025 Change in Terms").  The Change in Terms Agreement is attached as **Exhibit 12** and incorporated herein by reference.

32.    In connection with Robles' relationship with Truist's "Private Wealth Management" group, Robles executed and delivered to Truist (i) Promissory Note in the original principal amount of $2,700,000 dated July 26, 2024; and (ii) a Wealth Management Credit Line

Agreement and Initial Disclosure Statement dated July 25, 2025, in the maximum available amount of $3,000,000 (collectively, the "Private Wealth Management Agreements"). Copies of the foregoing Private Wealth Management Agreements are attached hereto as **Exhibit 13** and incorporated herein by reference.

33. In connection with each of the foregoing loans, including all amendments, extensions, and modifications thereto (collectively, the "Notes"), Robles executed continuing commercial guaranties in favor of Truist whereby he unconditionally and irrevocably guaranteed the full and punctual payment and performance of the Borrowers' obligations to Truist, whether now existing or hereafter arising, including those evidenced by the above-referenced Notes, the Card Agreements, and all other related agreements (the "Guaranties" and collectively with the Notes, the "Loan Documents"). True and correct copies of representative Guaranties include the April 1, 2024, April 24, 2024, September 10, 2024, and September 18, 2024 guaranty documents, attached collectively as **Exhibit 14** and incorporated herein by reference.

34. Pursuant to the Loan Documents, the Borrowers are obligated to (i) provide certain financial information, specifically including annual unqualified audited financial statements, on both a consolidated and consolidating basis, not later than 120 days after the end of each fiscal year beginning on December 31, 2024; and (ii) make punctual payments of all amounts as they became due and owing under the Loan Documents.

35. The Loan Documents define "Events of Default" to include, among other things, failure to abide by certain covenants, failure pay any amounts when due, and so-called "cross-defaults" under related documents, material adverse changes, and breaches of covenants, representations, or warranties. Upon default, Truist is entitled to accelerate all indebtedness in

full, making such amounts immediately due.  Truist has done so, demanding payment in full from Defendants under the Loan Documents and applicable law.

36.     Borrowers are in default under the Loan Documents as a result of their failure to provide written financial information (specifically, annual audited financial statements), failure to pay all amounts under the Notes when due, and failure to otherwise comply with the covenants and conditions of the Loan Documents.  As a result, Events of Default occurred under the Loan Documents via various "cross-default" provisions in the Loan Documents, which recite that a default under any Loan Document is a default under all other existing obligations to Truist.

37.     Defendants Dalaran, Servelite, and Servedark are similarly in default under the Card Agreements, which provides that events of default may include when "any required payment is not made . . . on or before the payment due date[,]" or when the borrower or guarantor "fails to pay any other obligation to Truist."

38.     As a result of the foregoing defaults, Guarantor Robles is similarly in default for failure to pay the guaranteed obligations.

39.     On November 21, 2025, Truist transmitted a written notice of default and demand for payment to Defendants regarding the defaults under the loan relationship (the "November 21, 2025 Default Letter").  A true and correct copy of the November 21, 2025 Default Letter is attached hereto as **Exhibit 15** and incorporated by reference herein.

40.     As recited in the November 21, 2025 Default Letter, Defendant Robles executed and delivered (i) an Assignment of Life Insurance Policy as Collateral dated as of September 10, 2024 pertaining to Massachusetts Mutual Life Insurance Company Co. Whole Life Insurance Policy No. 41530257 in the amount of $7,546,591.00 and (ii) an Assignment of Life Insurance Policy as Collateral dated as of September 10, 2024 pertaining to Massachusetts Mutual Life

Insurance Company Co. Whole Life Insurance Policy No. 32951837 in the amount of $10,841,602, both on the life of Sebastian S. Robles (the "Assignments of Life Insurance"). True and correct copies of the Assignments of Life Insurance are attached hereto as **Exhibit 16** and incorporated by reference herein.

41.     Both of the Assignments of Life Insurance were purportedly acknowledged by Massachusetts Mutual Life Insurance Company Co. ("MassMutual") on September 17, 2024, bearing the signature of one Dennis Cohan, as "President of Cohan Insurance Group on behalf of Mass Mutual Insurance Company." Truist has attempted to contact Mr. Cohan by telephone and electronic mail but has been unsuccessful in reaching him.

42.     In the exercise of ordinary due diligence, officers of Truist contacted MassMutual in an effort to verify the existence of the Assignments of Life Insurance as well as the underlying policies purportedly issued by MassMutual. MassMutual has been unable to verify the existence of either policy.

43.     On December 1, 2025, Truist transmitted a second written notice of default and demand for payment to Defendants (the "December 1 Default Letter," and together with the November 21, 2025 Default Letter, the "Default Letters"). A true and correct copy of the December 1, 2025 Default Letter is attached hereto as **Exhibit 17** and is incorporated by reference herein.

44.     Despite the Default Letters and Truist's demands, Defendants have not cured their defaults or paid the amounts due and owing.

45.     As of January 5, 2026, Defendants' obligations to Truist under the Loan Documents were as follows:

| Promissory Note and Credit Line Obligations | | | | |
|---|---|---|---|---|
| | **Principal** | **Interest (accrued as of Jan. 5, 2026)** | *Per Diem* **Default Interest** | **Total Amount Due (as of Jan. 5, 2026)** |
| December 2023 Equipment Loan | $1,235,548.59 | $7,853.04 | $514.81 | $1,243,401.63 |
| April 2024 Equipment Loan | $787,264.67 | $6,975.53 | $328.03 | $794,240.20 |
| April 2024 Loan | $1,486,249.27 | $35,009.43 | $619.27 | $1,521,877.97 |
| June 2024 Vehicle Loan | $629,864.19 | $14,539.36 | $262.44 | $644,403.55 |
| July 2024 Term Loan | $2,034,296.08 | $39,273.22 | $847.62 | $2,073,569.30 |
| September 2024 Equipment Loan | $2,203,713.13 | $54,492.93 | $918.21 | $2,258,206.06 |
| November 2024 Equipment Loan | $466,056.50 | $4,115.17 | $194.19 | $470,171.67 |
| $13 Million Line of Credit | $12,999,855.07 | $238,659.77 | $5,416.61 | $13,238,514.80 |
| | | | **TOTAL:** | **$22,244,385.18** |
| **Wealth Management Obligations** | | | | |
| | **Principal** | **Interest (accrued as of Jan. 5, 2026)** | *Per Diem* **Default Interest** | **Total Amount Due (as of Jan. 5, 2026)** |
| Private Wealth Management Promissory Note | $417,100.00 | $8,413.36 | $173.79 | $425,513.36 |
| Wealth Management Credit Line Agreement | $2,999,661.70 | $43,067.35 | $446.00 | $3,042,729.05 |
| | | | **TOTAL:** | **$3,468,242.41** |
| **Commercial Credit Card Obligations** | | | | |

|  | Principal | Interest and Fees (as of Jan. 5, 2026) | Late Fee | Total Amount Due (as of Jan. 5, 2026) |
|---|---|---|---|---|
| Dalaran Card | $989,982.18 | $14,756.58 | $7,500.00 | $1,012,238.76 |
| Servedark Card | $549,417.26 | $7,466.55 | $7,500.00 | $564,383.81 |
| Servelite Card | $499,117.74 | $7,654.36 | $7,500.00 | $514,272.0 |
|  |  |  | TOTAL: | $2,090,894.67 |

46.     In addition to the amounts delineated above, Truist has retained counsel and is entitled to recover its attorneys' fees, costs, and expenses as provided in the Loan Documents and Credit Agreements, and by applicable law.

47.     Truist now brings this suit against Defendants for breach of contract and breach of guaranty to recover all amounts due and owing.

## COUNT 1
### Breach of Contract Against Borrowers on the Notes

48.     The allegations set forth in Paragraphs 1-47 above are incorporated herein as if restated in full.

49.     The Borrowers executed and delivered the Notes, each of which constitutes a valid and enforceable written contract between Borrowers and Truist, and which obligate Borrowers to pay all principal, interest, fees, and other amounts when due.

50.     Truist has fully performed all of its obligations under the Notes, including but not limited to disbursing the loan proceeds to Borrowers under the respective Notes.

51.     The Borrowers defaulted under the Notes by failing to make payments when due, by breaching covenants set forth in the Loan Documents, and by failing to make payment in full upon acceleration of the Notes.

52.    Despite receiving written notices of default and demand for payment from Truist, as exhibited by the Default Letters attached hereto as Exhibit 15 and 17, Borrowers have failed and refused to make payment of all amounts due under the Notes.

53.    Borrowers' breach caused injury to Truist including, but not limited to, the unpaid principal, accrued and accruing interest, and late fees, under each Note, in an amount not less than $22,244,385.18, as summarized in the following table:

| Promissory Note and Credit Line Obligations | | | | |
|---|---|---|---|---|
| | **Principal** | **Interest (accrued as of Jan. 5, 2026)** | ***Per Diem* Default Interest** | **Total Amount Due (as of Jan. 5, 2026)** |
| December 2023 Equipment Loan | $1,235,548.59 | $7,853.04 | $514.81 | $1,243,401.63 |
| April 2024 Equipment Loan | $787,264.67 | $6,975.53 | $328.03 | $794,240.20 |
| April 2024 Loan | $1,486,249.27 | $35,009.43 | $619.27 | $1,521,877.97 |
| June 2024 Vehicle Loan | $629,864.19 | $14,539.36 | $262.44 | $644,403.55 |
| July 2024 Term Loan | $2,034,296.08 | $39,273.22 | $847.62 | $2,073,569.30 |
| September 2024 Equipment Loan | $2,203,713.13 | $54,492.93 | $918.21 | $2,258,206.06 |
| November 2024 Equipment Loan | $466,056.50 | $4,115.17 | $194.19 | $470,171.67 |
| $13 Million Line of Credit | $12,999,855.07 | $238,659.77 | $5,416.61 | $13,238,514.80 |
| | | | **TOTAL:** | **$22,244,385.18** |

**COUNT 2**
**Breach of Contract Against Servelite, Dalaran, and Servedark on the Card Agreements**

54.    The allegations set forth in Paragraphs 1-47 above are incorporated herein as if restated in full.

55.    Servelite, Dalaran, and Servedark ("**Commercial Card Holders**"), executed and delivered the respective Commercial Credit Agreements, each of which constitutes a valid and enforceable written contract between the Commercial Card Holders and Truist, and which obligate the Commercial Card Holders to pay all principal, interest, fees, and other amounts when due on a monthly basis.

56.    Truist has fully performed all of its obligations under the Card Agreements, including but not limited to extending the agreed upon maximum credit limits to the Commercial Card Holders, pursuant to each Card Agreements.

57.    The Commercial Card Holders defaulted under the Card Agreements by failing to make payments when due and by breaching covenants set forth in the Card Agreements by defaulting on other obligations due to Truist.

58.    The Commercial Card Holders have failed and refused to make payment of all amounts due under the Card Agreements and cure the existing defaults.

59.    The Commercial Card Holders' breach caused injury to Truist including, but not limited to, the unpaid principal, accrued and accruing interest, and late fees, under each of the Card Agreements, in an amount not less than $2,090,894.67, as summarized in the following table:

| Commercial Credit Card Obligations | | | | |
|---|---|---|---|---|
| | **Principal** | **Interest and Fees (as of Jan. 5, 2026)** | **Late Fees** | **Total Amount Due (as of Jan. 5, 2026)** |
| Dalaran Card | $989,982.18 | $14,756.58 | $7,500.00 | $1,012,238.76 |

14

| | | | |
|---|---|---|---|
| Servedark Card | $549,417.26 | $7,466.55 | $7,500.00 | $564,383.81 |
| Servelite Card | $499,117.74 | $7,654.36 | $7,500.00 | $514,272.0 |
| | | | **TOTAL:** | **$2,090,894.67** |

## COUNT 3
### Breach of Contract Against Robles on the Private Wealth Management Agreements

60. The allegations set forth in Paragraphs 1-47 above are incorporated herein as if restated in full.

61. Robles executed and delivered the Private Wealth Management Agreements, each of which constitutes a valid and enforceable written contract between Robles and Truist, and which obligate Robles to pay all principal, interest, fees, and other amounts when due.

62. Truist has fully performed all of its obligations under the Private Wealth Management Agreements, including but not limited to disbursing the loan proceeds to Borrowers under the respective agreements.

63. Robles defaulted under the Private Wealth Management Agreements by failing to make payments when due and by breaching covenants set forth in the Private Wealth Management Agreements.

64. Despite receiving written notices of default and demand for payment from Truist, as exhibited by the Default Letters attached hereto as Exhibit 15 and 17, Borrowers have failed and refused to make payment of all amounts due under the Private Wealth Management Agreements.

65. Borrowers' breach caused injury to Truist including, but not limited to, the unpaid principal, accrued and accruing interest, and late fees, under each of the Private Wealth

15

Management Agreements, in an amount not less than $3,468,242.41, as summarized in the following table:

| Wealth Management Obligations | | | | |
|---|---|---|---|---|
| | **Principal** | **Interest (accrued as of Jan. 5, 2026)** | *Per Diem* **Default Interest** | **Total Amount Due (as of Jan. 5, 2026)** |
| Private Wealth Management Promissory Note | $417,100.00 | $8,413.36 | $173.79 | $425,513.36 |
| Wealth Management Credit Line Agreement | $2,999,661.70 | $43,067.35 | $446.00 | $3,042,729.05 |
| | | | **TOTAL:** | **$3,468,242.41** |

## COUNT 4
### Breach of Guaranty Against Guarantor Robles

66.    The allegations set forth in Paragraphs 1-47 above are incorporated herein as if restated in full.

67.    Robles executed continuing Commercial Guaranties in favor of Truist guaranteeing the full and punctual payment and performance of all obligations owed by Borrowers to Truist, including those evidenced by the Notes identified herein, and those of the Commercial Card Holders, including those evidenced by the Card Agreements.

68.    The Guaranties are valid and enforceable contracts between Truist and Robles.

69.    Truist has fully performed all of its obligations under the Loan Documents and Card Agreements, including but not limited to disbursing the loan proceeds to Borrowers under the respective Notes and extending credit lines to the Commercial Card Holders under the respective Card Agreements.

70.     The Borrowers' defaults and failures to pay constitute events of default under the Notes, pursuant to which Truist made demand upon Robles.  Robles has failed and refused to pay the indebtedness following Truist's demand and thus, has breached the Guaranties. *See* Exhibits 15, 17.

71.     Robles' breach caused injury to Truist including, but not limited to, the unpaid principal, accrued and accruing interest, late fees, costs of collection, and reasonable attorneys' fees and expenses under each Note and Card Agreement, as well as the Private Wealth Management Obligations detailed above, in an amount not less than $27,803,522.30, as summarized in the following table:

| Promissory Note and Credit Line Obligations | | | | |
|---|---|---|---|---|
| | **Principal** | **Interest (accrued as of Jan. 5, 2026)** | ***Per Diem* Default Interest** | **Total Amount Due (as of Jan. 5, 2026)** |
| December 2023 Equipment Loan | $1,235,548.59 | $7,853.04 | $514.81 | $1,243,401.63 |
| April 2024 Equipment Loan | $787,264.67 | $6,975.53 | $328.03 | $794,240.20 |
| April 2024 Loan | $1,486,249.27 | $35,009.43 | $619.27 | $1,521,877.97 |
| June 2024 Vehicle Loan | $629,864.19 | $14,539.36 | $262.44 | $644,403.55 |
| July 2024 Term Loan | $2,034,296.08 | $39,273.22 | $847.62 | $2,073,569.30 |
| September 2024 Equipment Loan | $2,203,713.13 | $54,492.93 | $918.21 | $2,258,206.06 |
| November 2024 Equipment Loan | $466,056.50 | $4,115.17 | $194.19 | $470,171.67 |
| $13 Million Line of Credit | $12,999,855.07 | $238,659.77 | $5,416.61 | $13,238,514.80 |

| | | | TOTAL: | $22,244,385.18 |
|---|---|---|---|---|
| **Wealth Management Obligations** | | | | |
| | **Principal** | **Interest (accrued as of Jan. 5, 2026)** | ***Per Diem* Default Interest** | **Total Amount Due (as of Jan. 5, 2026)** |
| Private Wealth Management Promissory Note | $417,100.00 | $8,413.36 | $173.79 | $425,513.36 |
| Wealth Management Credit Line Agreement | $2,999,661.70 | $43,067.35 | $446.00 | $3,042,729.05 |
| | | | TOTAL: | $3,468,242.41 |
| **Commercial Credit Card Obligations** | | | | |
| | **Principal** | **Interest and Fees (as of Jan. 5, 2026)** | **Late Fees** | **Total Amount Due (as of Jan. 5, 2026)** |
| Dalaran Card | $989,982.18 | $14,756.58 | $7,500.00 | $1,012,238.76 |
| Servedark Card | $549,417.26 | $7,466.55 | $7,500.00 | $564,383.81 |
| Servelite Card | $499,117.74 | $7,654.36 | $7,500.00 | $514,272.0 |
| | | | TOTAL: | $2,090,894.67 |
| **TOTAL AMOUNT OWED BY SEBASTIAN ROBLES, individually and as guarantor on all obligations:** | | | | $27,803,522.30 |

## Attorney's Fees

72.     The Notes, Private Wealth Management Agreements, Card Agreements, and Guaranties each provide that Truist is entitled to recover all reasonable attorney's fees, costs, and expenses incurred in enforcing Defendants' obligations.  Truist has been forced to retain the law

firm of Adams & Reese, LLP to enforce Defendants obligations under the foregoing documents, and therefore, Truist seeks recovery of its attorney's fees incurred herein.

73.     Additionally, Truist is entitled to recover its reasonable and necessary attorney's fees from each Defendant under Texas Civil Practice & Remedies Code §§ 38.001 et seq. because this is a suit for breach of a written contract.  Truist presented its claim to Defendants and has retained counsel to enforce the Notes, Private Wealth Management Agreements, Card Agreements, and Guaranties given Defendants' default.  Defendants did not tender the amount owed within 30 days after the claim was presented.

<strong><u>Conditions Precedent</u></strong>

74.     All conditions precedent to Truist's claims have occurred, been performed, or been waived.

<strong><u>Prayer</u></strong>

For the foregoing reasons, Plaintiff Truist Bank respectfully asks that the Court issue citation for each of the Defendants to appear and answer, and that Plaintiff Truist Bank be awarded a judgment against each Defendant, jointly and severally, for the following:

      a.  Actual damages;

      b.  Pre-judgment interest;

      c.  Post-judgment interest;

      d.  Court costs;

      e.  Reasonable and necessary attorney's fees; and

      f.  All other relief to which Truist may be entitled to at law or in equity.

***

19

Dated: January 16, 2026.

Respectfully submitted,

**ADAMS & REESE, LLP**

By: */s/ Evan A. Moeller*
     Evan A. Moeller
     Attorney-in-Charge
     Texas Bar No.: 24051067
     SDTX No. 664837
     Emory C. Powers
     Texas Bar No.: 24131597
     SDTX No. 3826647
     LyondellBasell Tower
     1221 McKinney Street, Suite 4400
     Houston, Texas 77010
     Telephone: (713) 652-5151
     Evan.Moeller@arlaw.com
     Emory.Powers@arlaw.com

     Nikolaus F. Schandlbauer
     *Pro Hac Vice Forthcoming*
     20 F Street NW, Suite 500
     Washington, DC 20001
     Nikolaus.Schandlbauer@arlaw.com

*Attorneys for Truist Bank*