# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $13,000,000.00 | 09-10-2025 | 12-10-2025 | 00009 | | ▓▓▓▓▓ | 12754 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  SERVELITE INC, STORMWIND LLC, DALARAN
LLC, SERVELITE SOLUTIONS LLC and SERVELITE
COMMUNICATIONS INC
19728 Saums Rd
Houston, TX  77084-4734

**Lender:**  TRUIST BANK
HOUSTON - COMMERCIAL LOANS
1400 POST OAK BLVD FL 7
Houston, TX  77056-3029

---

**Principal Amount: $13,000,000.00**                **Date of Agreement:  September 10, 2025**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**  The indebtedness evidenced by that certain promissory note dated September 10, 2024, in the original amount of $13,000,000.00 payable to the order of Lender, as may have been amended, modified, renewed or extended from time to time together with all other documents evidencing said indebtedness.

**DESCRIPTION OF CHANGE IN TERMS.  Generally, the change of terms includes:**

Change in Interest Rate as set forth in the Interest Rate Provision below.
Extension of Maturity Date from September 10, 2025 to December 10, 2025.

**This listing is provided in general terms and may not include all changes to the loan terms reflected in the body of this Change in Terms Agreement.**

**PROMISE TO PAY.  SERVELITE INC, STORMWIND LLC, DALARAN LLC, SERVELITE SOLUTIONS LLC and SERVELITE COMMUNICATIONS INC ("Borrower") jointly and severally promise to pay to TRUIST BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Thirteen Million & 00/100 Dollars ($13,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance or maturity, whichever occurs first.**

**CHOICE OF USURY CEILING AND INTEREST RATE.**  The interest rate on this Agreement has been implemented under the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**PAYMENT.  Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on December 10, 2025.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning October 10, 2025, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**VARIABLE INTEREST RATE.**  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the changes in an independent index which is the Term SOFR reference rate for the one month tenor ("Applicable Tenor") as further defined in the Term SOFR Addendum of even date (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each Interest Period.  "Interest Period" means a one month period.  The initial Interest Period shall commence on the date of the Note with each successive Interest Period commencing on the same day of the month as the Note date each month thereafter; provided that (i) if there is no numerically corresponding day to the Note date in the month on which the interest Period is to commence, then the Interest Period shall commence on the last calendar day of said month; (ii) no Interest Period shall extend beyond the earlier of termination of the Loan whether by maturity or acceleration and (iii) the initial Interest Period may commence on the initial funding or booking date and result in a shorter initial Interest Period. Borrower understands that Lender may make loans based on other rates as well.  Interest prior to maturity on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index (the "Margin").  If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index.  The change to the Margin may be a positive or negative value, or zero.  In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable.  Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE:  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.  For purposes of this Agreement, the "maximum rate allowed by applicable law" means the greater of  (A)  the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Agreement, or  (B)  the "Weekly Ceiling" as referred to in Sections 303.002 and 303.003 of the Texas Finance Code.

**INTEREST CALCULATION METHOD.  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be.  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**PREPAYMENT.**  Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Agreement or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to

**Exhibit 12**

# CHANGE IN TERMS AGREEMENT
## (Continued)

**Loan No: 00009**                                                              **Page 2**

Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: **TRUIST BANK, HOUSTON - COMMERCIAL LOANS, 1400 POST OAK BLVD FL 7, Houston, TX 77056-3029.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Any guarantor or Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Borrower's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Agreement or the Related Documents in connection with the obtaining of the Indebtedness evidenced by this Agreement or any security document directly or indirectly securing repayment of this Agreement is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Agreement, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Agreement or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Agreement if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Agreement; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Agreement, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the debt against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Collateral securing other loans with Lender may also secure this loan. To the extent collateral previously has been given to Lender by any person which may secure this Indebtedness, whether directly or indirectly, it is specifically agreed that, to the extent prohibited by law, all such collateral consisting of household goods will not secure this Indebtedness. In addition, if any collateral requires the giving of a right of rescission under Truth in Lending for this Indebtedness, such collateral also will not secure this Indebtedness unless and until all required

Exhibit 12

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: 00009                                                                                                    Page 3

notices of that right have been given.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender. **This revolving line of credit shall not be subject to Ch. 346 of the Texas Finance Code.**

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender unpaid.

**AUTHORIZATION OF ADVANCES.** In addition to any advances made in accordance with the terms of the Note or any other related document, advances may be made in accordance with the terms and conditions of any other agreement between Borrower and Lender, and Borrower agrees to be liable for all sums advanced in accordance with any instructions provided by Borrower or its representatives pursuant to such agreements and products or services offered thereunder. All advances are subject to availability and Borrower shall comply with any conditions or requirements for advances under the loan evidenced by the Note.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity of enforceability of any other provision of this Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Agreement in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Agreement or when this Agreement is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them; provided however, Borrower is not permitted to assign its duties or obligations hereunder. All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require. Wherever possible, the provisions of this Agreement shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral; (iii) take possession of the Collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law; (v) make demand upon any or all Guarantors; and (vi) exercise any other right or remedy which Lender has under this Agreement, the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the Indebtedness has been paid in full or until the default has been satisfactorily cured which may be allowed at the sole discretion of the Lender, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to

Exhibit 12

## CHANGE IN TERMS AGREEMENT
### (Continued)

**Loan No: 00009**                                                             **Page 4**

make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**CLAIMS AND DEFENSES.** There are no defenses or counterclaims, offsets or other adverse claims, demands or actions of any kind, personal or otherwise, that Borrower, any Guarantor, or any other maker, endorser, obligor or grantor could assert with respect to the Note, this Agreement, or the Related Documents.

**CONFLICTING PROVISIONS.** Should any provision of this Agreement conflict with the provision of the Note and/or any Related Documents, the terms of this Agreement shall control. The "Note" means the Note described in this Agreement, and "Related Documents" means all loan documents now or hereafter executed in connection with the loan evidenced hereby.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**REAMORTIZATION.** In addition to other rights herein, Lender reserves the right in its sole discretion, from time to time, to (a) adjust any periodic fixed payment in such amounts and at such times to repay principal at the amortization period originally agreed upon and accruals of interest as the same becomes due, and (b) increase Borrower's payments to pay all accruals of interest for the period and accruals of unpaid interest from previous periods.

**COUNTERPARTS.** This Agreement may be executed by one or more parties on any number of separate counterparts and all such counterparts taken together shall be deemed to constitute one and the same instrument.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**WAIVER BY BORROWER.** To the maximum extent permitted by applicable law, Borrower hereby waives all rights, remedies, claims, and defenses based upon or related to Sections 51.003, 51.004, and 51.005 of the Texas Property Code, to the extent the same pertain or may pertain to any enforcement of this Agreement and the indebtedness referenced herein.

**RENEWAL.** In addition to any other rights set forth herein, Lender, in its sole discretion, may, but shall not be obligated to, renew or extend the final maturity date under the Note by written notice from Lender to Borrower. Any such extension or renewal may be conditioned upon timely payment of a fee by Borrower to the extent set forth in the notice. Any such extension or renewal shall not operate as a waiver of any rights, duties, defaults or defaults under this Note or any related document.

**WAIVER OF CONSUMER RIGHTS. TO THE EXTENT APPLICABLE, BORROWER WAIVES BORROWER'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT, Section 17.21 ET. SEQ., TEXAS BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF BORROWER'S OWN SELECTION, BORROWER VOLUNTARILY CONSENTS TO THIS WAIVER. BORROWER REPRESENTS THAT IT HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT ENABLE IT TO EVALUATE THE MERITS AND RISKS OF THIS TRANSACTION AND THAT THE WAIVER IN THIS PARAGRAPH IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND THAT BORROWER UNDERSTANDS THE LEGAL CONSEQUENCES OF SIGNING THIS WAIVER..**

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**FINANCIAL INFORMATION.** Borrower represents and covenants with Lender that: (1) all financial information, including but not limited to any and all financial statements and tax returns, previously furnished or which is now being furnished by or on behalf of Borrower to Lender for the purposes of or in connection with the Note or any related transaction is, and all such information furnished by or on behalf of Borrower to Lender in the future will be, (a) accurate, true and correct in all material respects on the date such information is dated or certified; (b) complete in all material respects and no material fact or information has been omitted which, by such omission, could cause the information to be misleading; and (c) a fair and accurate presentation of the financial condition and operations of the Borrower; (2) along with the submission of any financial information, Borrower will notify Lender if there has been a material change in the financial condition of the Borrower since the date of the financials being submitted; (3) Borrower shall also furnish such information as Lender shall request related to the Collateral and the financial condition of any obligor all of which shall be complete, true and correct in all material respects.

**FINANCIAL STATEMENT CERTIFICATION AND COMPLIANCE CERTIFICATE.** Upon the request of Lender, concurrently with the delivery of financial statements, Borrower shall deliver to Lender a certificate in a form satisfactory to Lender certifying (i) the financial statements are complete, true and accurate in all material respects; (ii) Borrower is in compliance with all covenants in the Note and any related documents; (iii) stating whether there exists an event of default or any circumstances which, with notice or the passage of time or both, would constitute an event of default; and (iv) if there exists an event of default or any such circumstance, specifying the details thereof and the action which Borrower has taken or proposes to take with respect thereto (it being understood that any action by Borrower to cure any default shall not serve as a cure of said default under the terms of the Note or any related document nor prevent Lender from exercising any right with respect to said default).

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Agreement, the Promissory Note, as amended or modified from time to time, or any document related thereto unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement, the Promissory Note or any related document shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision thereof. No prior waiver by Lender, nor any course of dealing between Lender and Borrower or between Lender any grantor or guarantor, shall constitute a waiver of any of Lender's rights or of the obligations any of Borrower's or any grantor or guarantor in connection with any future transaction. Whenever the consent of Lender is required under this Agreement, the Note or any related document, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**CHOICE OF VENUE.** Any legal action with respect to the indebtedness evidenced by the Note may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court

**Exhibit 12**

## CHANGE IN TERMS AGREEMENT
**Loan No: 00009**                                            (Continued)                                            **Page 5**

situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**KYC; BENEFICIAL OWNERSHIP INFORMATION.** Upon request of Lender, Borrower shall, and shall cause any guarantor or other parties as required by Lender to, provide Lender (i) documentation and other information so requested in connection with applicable "know your customer" and anti-money-laundering rules and regulations, including the PATRIOT Act, and (ii) beneficial ownership certificates or other information as Lender shall require from any "legal entity customer" under beneficial ownership regulations, including 31 C.F.R. § 1010.230, the Beneficial Ownership Regulation. Until the Note is paid in full, Borrower represents and covenants that none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**SANCTIONS CONCERNS AND ANTI-CORRUPTION LAWS.** While the loan evidenced by the Note remains outstanding, (a) Borrower and any guarantor, each of their subsidiaries or affiliates, and their respective directors, officers, employees, or agents will not (i) be or become a Sanctioned Person, (ii) allow any of their assets to be located in a Sanctioned Country, or (iii) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country; and (b) no part of the proceeds of the loan evidenced by the Note will be used directly or indirectly (i) to fund or finance any operations, investments or activities in or make any payments to a (x) person that is, or is owned or controlled by, persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (y) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (ii) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption. Borrower further represents that Borrower and any guarantor, each of their subsidiaries or affiliates have conducted their business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977 and other applicable anti-corruption legislation in other jurisdictions, and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws. "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U.S. Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority.

**EXECUTION; ESIGNATURE.** This Agreement and any other documents to be delivered in connection herewith may be manually or, if approved by Lender, electronically signed, including signatures transmitted by telecopy, emailed PDF, or by any other electronic means that reproduces an image of an actual executed signature page. If electronically signed, to the fullest extent permitted by applicable law, including, without limitation, the Federal Electronic Signatures in Global and National Commerce Act, any state laws based on the Uniform Electronic Transactions Act, and the UCC (i) each electronic signature shall be of the same legal effect, validity, enforceability and admissibility as a manually executed signature, and (ii) the electronic matching of assignment terms, electronic contract formations on electronic platforms, and the keeping of records in electronic form all shall be of the same legal effect, validity, enforceability and admissibility as the use of a paper-based recordkeeping system. The words execution, execute, signed, signature and words of like import in this Agreement or any document executed in connection herewith shall include electronic signatures as contemplated in this paragraph. Nothing herein shall require Lender to accept electronic signatures in any form or format or through any electronic platform or service. Notwithstanding acceptance of any electronic signature by Lender, manually executed signatures shall be delivered promptly upon request by Lender.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Agreement until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Agreement, and notice of acceleration of the maturity of this Agreement. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**Exhibit 12**

## CHANGE IN TERMS AGREEMENT
### (Continued)

| Loan No: 00009 | | Page 6 |
|---|---|---|

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

SERVELITE INC

By: _____
    SEBASTIAN S ROBLES, President of SERVELITE INC

STORMWIND LLC

By: _____
    SEBASTIAN S ROBLES, Managing Member of
    STORMWIND LLC

DALARAN LLC

By: _____
    SEBASTIAN S ROBLES, Managing Member of
    DALARAN LLC

SERVELITE SOLUTIONS LLC

By: _____
    SEBASTIAN S ROBLES, Managing Member of
    SERVELITE SOLUTIONS LLC

SERVELITE COMMUNICATIONS INC

By: _____
    SEBASTIAN S ROBLES, President of SERVELITE
    COMMUNICATIONS INC

EACH GUARANTOR HEREBY ACKNOWLEDGES HAVING READ, UNDERSTOOD AND AGREED TO ALL OF THE TERMS OF THIS AGREEMENT AND HEREBY RATIFIES AND CONFIRMS THEIR GUARANTY OF THE INDEBTEDNESS DESCRIBED HEREIN.

GUARANTOR:

X _____
    SEBASTIAN S ROBLES, Individually

LaserPro, Ver. 24.2.10.068 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - TX L:\CFI\LPL\D20C.FC TR-320244 PR-173

Exhibit 12

# TERM SOFR ADDENDUM

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $13,000,000.00 | 09-10-2025 | 12-10-2025 | 00009 | | | 12754 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** SERVELITE INC, STORMWIND LLC, DALARAN LLC, SERVELITE SOLUTIONS LLC and SERVELITE COMMUNICATIONS INC
19728 Saums Rd
Houston, TX 77084-4734

**Lender:** TRUIST BANK
HOUSTON - COMMERCIAL LOANS
1400 POST OAK BLVD FL 7
Houston, TX 77056-3029

This Term SOFR Addendum is entered into on September 10, 2025 and is made a part of the Note (as hereinafter defined) as amended, restated and modified from time to time.

**1. Definitions.** Any capitalized terms not defined herein shall have the meaning set forth in the Note.

**"Applicable Tenor"** shall have the meaning set forth in the Variable Interest Rate section of the Note.

**"Determination Day"** means that date which is two U.S. Government Securities Business Days prior to the first day of the Interest Period if such day is a U.S. Government Securities Business Day.

**"Interest Period"** shall have the meaning set forth in the Variable Interest Rate section of the Note.

**"Note"** means as applicable the Promissory Note of even date given by Borrower in favor of Lender referencing this Addendum or the Promissory Note as described in the Change in Terms Agreement of even date referencing this Addendum.

**"Term SOFR"** means the Term SOFR reference rate for the Applicable Tenor tenor as administered by the Term SOFR Administrator and quoted by Bloomberg Finance L.P., or any quoting service or commonly available source utilized by Lender on the Determination Day; provided that if as of 5:00 p.m. (New York time) on the Determination Day, Term SOFR for the Applicable Tenor has not been published by the Term SOFR Administrator, then the rate used will be Term SOFR for the Applicable Tenor as published by the Term SOFR Administrator for the immediately preceding U.S. Government Securities Business Day for which such rate was published on such administrator's website so long as such immediately preceding U.S. Government Securities Business Day is not more than three (3) U.S. Government Securities Business Days prior to such Determination Day; and further provided if Term SOFR would be less than zero percent (0%), then it shall be deemed to be zero percent (0%).

**"Term SOFR Administrator"** means CME Group Benchmark Administration Limited or a successor administrator of the Term SOFR Reference Rate selected by Lender in its sole discretion.

**"U.S. Government Securities Business Day"** means any day except for (i) a Saturday, (ii) a Sunday or (iii) a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities.

**2. Effect of Benchmark Transition Event.**
(a)      In the event Lender determines in its sole discretion that (i) there is a public announcement by the administrator of a Benchmark or a Relevant Governmental Body that such Benchmark will cease or has ceased to be published; (ii) a public announcement is made by the administrator of a Benchmark or any Relevant Governmental Body that the Benchmark is no longer representative; or (iii) a Relevant Governmental Body has determined that Lender may no longer utilize the Benchmark for purposes of setting interest rates (each a "Benchmark Transition Event"); Lender will have no obligation to make, fund or maintain a loan based on the Benchmark and on a date and time determined by Lender, without any further action or consent of by Borrower or amendment to this Addendum or any other Loan Document, the first available alternative set forth in the order below that can be determined by Lender shall replace the Benchmark ("Successor Rate"):

(x)    Relevant Governmental Body Recommended Rate; or
(y)    Alternative Benchmark Rate.

(b)      In connection with the implementation of a Successor Rate, Lender will have the right to make Conforming Changes from time to time and, notwithstanding anything to the contrary herein or in any other Loan Document, any amendments implementing such Successor Rate or Conforming Changes will become effective without any further action or consent of Borrower. Notwithstanding anything else herein, if at any time any Successor Rate as so determined would otherwise be less than zero percent (0%), the Successor Rate will be deemed to be zero percent (0%) for the purposes of this Addendum and the other Loan Documents. For avoidance of doubt, following the implementation of a Successor Rate, the Interest Rate under the Note will be the Successor Rate plus the Margin, if any and subject to any Minimum Rate.

(c)      Lender will notify (in one or more notices) Borrower of the implementation of any Successor Rate. Any determination or decision that may be made by Lender pursuant to this Section, including any determination with respect to a tenor, rate or adjustment or of the occurrence or non-occurrence of an event, circumstance or date and any decision to take or refrain from taking any action or any selection, will be conclusive and binding absent manifest error and may be made in Lender's sole discretion and without consent from Borrower.

(d)      In the event Lender determines in its sole discretion that Lender cannot make, fund, or maintain a loan based upon the Benchmark due to illegality or the inability to ascertain or determine said rate on the basis provided for herein ("Unavailability Period") and a Benchmark Transition Event has not occurred, then at the election of Lender the Benchmark shall convert to the Alternative Benchmark Rate for purposes of calculating the Interest Rate on the then outstanding principal balance and for interest accruing on any fundings or advances requested by Borrower and, thereafter, the Interest Rate on the Note shall adjust simultaneously with any fluctuation in the Alternative Benchmark Rate. In the event Lender determines that the circumstances giving rise the Unavailability Period have ended, at such time as determined by Lender the Benchmark will revert to the prior Benchmark (provided a Benchmark Transition Event has not occurred). Lender shall provide notice, which may be after the implementation of the Alternative Benchmark Rate as contemplated hereunder, to Borrower of any Benchmark change that is made pursuant to this Section. For avoidance of doubt, following conversion to the Alternative Benchmark Rate, the Interest Rate under the Note will be the Alternative Benchmark Rate plus the Margin, if any and subject to any Minimum Rate.

Exhibit 12

(e)       For purposes of this Section, in addition to the definitions set forth in Section 1, the following definitions shall apply:

**"Alternative Benchmark Rate"** means a rate of interest per annum equal to the Lender's Prime Rate minus two and 5/10 percent (2.5%) which shall adjust daily with changes in Lender's Prime Rate.

**"Benchmark"** means initially Term SOFR, and thereafter the then-current Successor Rate.

**"Conforming Changes"** means, with respect to any Successor Rate, any technical, administrative or operational changes (including changes to the definitions such as "Business Day," "Interest Period," timing and frequency of determining rates and making payments of interest, timing of borrowing requests or prepayment, conversion or continuation notices, length of lookback periods, the applicability of breakage provisions and other technical, administrative or operational matters) that Lender decides may be appropriate to reflect the adoption and implementation of such Successor Rate and to permit the administration thereof by Lender in a manner Lender decides is reasonably necessary in connection with the administration of this Addendum and the other Loan Documents.

**"Lender's Prime Rate"** means, for any day, a rate per annum equal to Lender's announced Prime Rate, and shall change effective on the date any change in Lender's Prime Rate is publicly announced as being effective; provided however, if the Note is governed by Subtitles 9 or 10 of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, "Prime Rate" shall mean the Wall Street Journal Prime Rate, which is the Prime Rate published in the "Money Rates" section of the Wall Street Journal from time to time, and shall change effective on the date any change in such rate is reported.

**"Loan Documents"** means the Note, this Addendum, any loan agreement including any schedule attached thereto, deed of trust, mortgage, security deed, assignment of leases and rents, guaranty agreement, security agreement, financing statements, and all other documents, certificates, and instruments executed in connection therewith, and all renewals, extensions, modifications, substitutions, and restatements thereof and therefor; provided however, for purposes of Section 2 any swap agreement shall not be deemed a Loan Document.

**"Relevant Governmental Body"** means the Federal Reserve Board and/or the Federal Reserve Bank of New York, or a committee officially endorsed or convened by the Federal Reserve Board and/or the Federal Reserve Bank of New York or any successor thereto.

**"Relevant Governmental Body Recommended Rate"** means, in respect of any relevant day, the rate (inclusive of any spreads or adjustments which may be positive or negative) recommended as the replacement for the Benchmark by the Relevant Governmental Body (which rate may be produced by the Federal Reserve Bank of New York or another administrator).

**3.    Additional Costs.** In the event that any applicable law or regulation, guideline or order or the interpretation or administration thereof by any governmental or regulatory authority charged with the interpretation or administration thereof (whether or not having the force of law) (i) shall change the basis of taxation of payments to Lender of any amounts payable by the Borrower hereunder (other than taxes imposed on the overall net income of Lender) or (ii) shall impose, modify or deem applicable any reserve, special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by Lender, or (iii) shall impose any other condition with respect to the Note, and the result of any of the foregoing is to increase the cost to Lender of making or maintaining the loan evidenced by the Note or to reduce any amount receivable by Lender under the loan evidenced by the Note, and Lender determines that such increased costs or reduction in amount receivable was attributable to the use of the current Benchmark, then the Borrower shall from time to time, upon demand by Lender, pay to Lender additional amounts sufficient to compensate Lender for such increased costs (the "Additional Costs"). A detailed statement as to the amount of such Additional Costs, prepared in good faith and submitted to the Borrower by Lender, shall be conclusive and binding in the absence of manifest error.

**Exhibit 12**

**TERM SOFR ADDENDUM**
**(Continued)**

Loan No: 00009                                                                                                      Page 3

---

BORROWER:

SERVELITE INC

By: _____
SEBASTIAN S ROBLES, President of SERVELITE INC

STORMWIND LLC

By: _____
SEBASTIAN S ROBLES, Managing Member of
STORMWIND LLC

DALARAN LLC

By: _____
SEBASTIAN S ROBLES, Managing Member of
DALARAN LLC

SERVELITE SOLUTIONS LLC

By: _____
SEBASTIAN S ROBLES, Managing Member of
SERVELITE SOLUTIONS LLC

SERVELITE COMMUNICATIONS INC

By: _____
SEBASTIAN S ROBLES, President of SERVELITE
COMMUNICATIONS INC

Exhibit 12