

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,700,000.00 | 07-26-2024 | On Demand | 00001 | | █████████ | 12566 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** SEBASTIAN S. ROBLES
2415 LEGENDS WAY
KATY, TX  77493-3014

**Lender:** TRUIST BANK
PWM HOUSTON TEAM
1400 Post Oak Blvd Ste 650
Houston, TX  77056-6008

**Principal Amount: $2,700,000.00**  **Date of Note: July 26, 2024**

**PROMISE TO PAY.** SEBASTIAN S. ROBLES ("Borrower") promises to pay to TRUIST BANK ("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Two Million Seven Hundred Thousand & 00/100 Dollars ($2,700,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance or maturity, whichever occurs first.

**CHOICE OF USURY CEILING AND INTEREST RATE.** The interest rate on this Note has been implemented under the "Weekly Ceiling" as referred to in Sections 303 002 and 303.003 of the Texas Finance Code

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning August 26, 2024, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PAYABLE ON DEMAND.** This Note evidences a discretionary line of credit ("Line") and any advances under this Note **are payable on demand at any time in Lender's sole and absolute discretion.** Advances under this Note shall be made in Lender's sole and absolute discretion. No term or provision contained in this Note or any other document executed in connection with or related to the Note or the loan evidenced thereby ("Related Documents") and no pattern or practice established between Borrower and Lender with respect to requesting and/or making advances shall be deemed to create a right on the part of the Borrower to receive any advance or a duty on the part of the Lender to make any advance. Borrower may request advances under this Note, however, Lender shall not, at any time, have any obligation to make advances under this Note, and all amounts that are advanced and remain outstanding plus accrued interest thereon and any applicable fees and charges are due and payable in full on demand   At any time, and for any reason, without prior notice to Borrower, and notwithstanding any provision of any Related Document, Lender may make demand for payment in full, terminate the Line or decline to make advances

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the the Term SOFR reference rate for the one month tenor ("Applicable Tenor") as further defined in the Term SOFR Addendum of even date (the "Index")   The Index is not necessarily the lowest rate charged by Lender on its loans   Lender will tell Borrower the current Index rate upon Borrower's request   The interest rate change will not occur more often than each Interest Period   "Interest Period" means the period commencing on the date of the Note and with each successive Interest Period commencing on the same day of the month as the Note date that is one month thereafter  (in each case, subject to the availability thereof), provided that (i) if any Interest Period would commence on a day other than a business day, the then current Interest Period shall be extended and the Interest Period shall commence on the next succeeding business day unless such next succeeding business day would fall in the next calendar month, in which case such Interest Period shall commence on the next preceding Business Day, (ii) for any month in which there is no numerically corresponding day in the month on which the Interest Period may commence, then it shall commence on the last business day of the last calendar month of such Interest Period, (iii) no Interest Period shall extend beyond the earlier of termination of Loan whether by maturity or acceleration and (iv) the initial Interest Period may commence on the initial funding or booking date and result in a shorter initial Interest Period   Borrower understands that Lender may make loans based on other rates as well.   Interest prior to maturity on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.600 percentage points over the Index (the "Margin"). If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index   Lender may also amend and adjust the Margin to accompany the substitute index   The change to the Margin may be a positive or negative value, or zero   In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable   Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE  Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. For purposes of this Note, the "maximum rate allowed by applicable law" means the greater of  (A)  the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or  (B)  the "Weekly Ceiling" as referred to in Sections 303.002 and 303 003 of the Texas Finance Code

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due   Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest   Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest   Rather, early payments will reduce the principal balance due   Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language   If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender   **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: TRUIST BANK, PWM HOUSTON TEAM, 1400 Post Oak Blvd Ste 650, Houston, TX  77056-6008.**

Exhibit 13

**PROMISSORY NOTE**
**(Continued)**

| | | |
|---|---|---|
| **Loan No: 00001** | | **Page 2** |

**LATE CHARGE.** If a regularly scheduled interest payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.** If Lender demands payment of this loan, and Borrower does not pay the loan in full **within 10 days after Lender's demand, Borrower also will be charged 5.000% of the sum of the unpaid principal plus accrued interest.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender unpaid.

**LENDER'S REMEDIES.** If payment is not made upon demand, Borrower shall be deemed to be in default and, Lender shall have the right, in its sole and absolute discretion and without prior notice to Borrower, to: (i) take possession of the Collateral or any part thereof, (ii) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law, (iii) make demand upon any or all guarantors; and (iv) exercise any other right or remedy which Lender has under any loan document or which is otherwise available at law or in equity. Upon demand, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the indebtedness is paid in full, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any grantor, shall not affect Lender's right to demand payment and to exercise its rights and remedies

**FURTHER ASSURANCES; CORRECTION OF ERRORS.** Borrower will and will cause any grantor and guarantor to cooperate fully with Lender and execute such further instruments, documents and agreements and shall do any and all such further acts, as may be reasonably requested by Lender to better evidence and reflect the transactions described herein and contemplated hereby and to carry into effect the intent and purposes of this Note and any Related Documents, including without limitation the granting, perfecting and/or extending of any security interest in the Collateral. In addition, Borrower will and will cause any grantor or guarantor to cooperate with Lender to correct any errors in the Note or any Related Document and shall execute such documentation as is necessary to do so

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note, the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Texas.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by Control Agreement for Account Number 7996398, a Control Agreement for Account Number 7996178, a Truist Bank Investment Account Security Agreement for Account Number 7996398 and a Truist Bank Investment Account Security Agreement for Account Number 7996178 to Lender, dated July 26, 2024.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either. (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. **This revolving line of credit shall not be subject to Ch. 346 of the Texas Finance Code.**

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**FINANCIAL INFORMATION.** Borrower represents and covenants with Lender that: (1) all financial information, including but not limited to any and all financial statements and tax returns, previously furnished or which is now being furnished by or on behalf of Borrower to Lender for the purposes of or in connection with the Note or any related transaction is, and all such information furnished by or on behalf of Borrower to Lender in the future will be, (a) accurate, true and correct in all material respects on the date such information is dated or certified, (b) complete in all material respects and no material fact or information has been omitted which, by such omission, could cause the information to be misleading; and (c) a fair and accurate presentation of the financial condition and operations of the Borrower; (2) along with the submission of any financial information, Borrower will notify Lender if there has been a material change in the financial condition of the Borrower since the date of the financials being submitted, (3) Borrower shall also furnish such information as Lender shall request related to the Collateral and the financial condition of any obligor all of which shall be complete, true and correct in all material respects.

**FINANCIAL STATEMENT CERTIFICATION AND COMPLIANCE CERTIFICATE.** Upon the request of Lender, concurrently with the delivery of financial statements, Borrower shall deliver to Lender a certificate in a form satisfactory to Lender certifying (i) the financial statements are complete, true and accurate in all material respects, (ii) Borrower is in compliance with all covenants in the Note and any related documents, (iii) stating whether there exists an event of default or any circumstances which, with notice or the passage of time or both, would constitute an event of default; and (iv) if there exists an event of default or any such circumstance, specifying the details thereof and the action which Borrower has taken or proposes to take with respect thereto (it being understood that any action by Borrower to cure any default shall not serve as a cure of said default under the terms of the Note or any related document nor prevent Lender from exercising any right with respect to said default).

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Note, as amended or modified from time to time, or any document related thereto unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Note or any related document shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision thereof. No prior waiver by Lender, nor any course of dealing between Lender and Borrower or between Lender any grantor or

**Exhibit 13**

**PROMISSORY NOTE**
**(Continued)**

Loan No: 00001                                                                                                                Page 3

guarantor, shall constitute a waiver of any of Lender's rights or of the obligations any of Borrower's or any grantor or guarantor in connection with any future transaction. Whenever the consent of Lender is required under this Note or any related document, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**AUTHORIZATION OF ADVANCES.** In addition to any advances made in accordance with the terms of the Note or any other related document, advances may be made in accordance with the terms and conditions of any other agreement between Borrower and Lender, and Borrower agrees to be liable for all sums advanced in accordance with any instructions provided by Borrower or its representatives pursuant to such agreements and products or services offered thereunder. All advances are subject to availability and Borrower shall comply with any conditions or requirements for advances under the loan evidenced by the Note.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect, and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph

**CHOICE OF VENUE.** Any legal action with respect to the indebtedness evidenced by the Note may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them, provided however, Borrower is not permitted to assign its duties or obligations hereunder. All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require. Wherever possible, the provisions of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**WAIVER OF CONSUMER RIGHTS. TO THE EXTENT APPLICABLE, BORROWER WAIVES BORROWER'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT, Section 17.21 ET. SEQ., TEXAS BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF BORROWER'S OWN SELECTION, BORROWER VOLUNTARILY CONSENTS TO THIS WAIVER. BORROWER REPRESENTS THAT IT HAS KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS THAT ENABLE IT TO EVALUATE THE MERITS AND RISKS OF THIS TRANSACTION AND THAT THE WAIVER IN THIS PARAGRAPH IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND THAT BORROWER UNDERSTANDS THE LEGAL CONSEQUENCES OF SIGNING THIS WAIVER..**

**KYC; BENEFICIAL OWNERSHIP INFORMATION.** Upon request of Lender, Borrower shall, and shall cause any guarantor or other parties as required by Lender to, provide Lender (i) documentation and other information so requested in connection with applicable "know your customer"

**Exhibit 13**

| | **PROMISSORY NOTE** | |
| :--- | :---: | ---: |
| **Loan No: 00001** | **(Continued)** | **Page 4** |

and anti-money-laundering rules and regulations, including the PATRIOT Act, and (ii) beneficial ownership certificates or other information as Lender shall require from any "legal entity customer" under beneficial ownership regulations, including 31 C F R. § 1010.230, the Beneficial Ownership Regulation. Until the Note is paid in full, Borrower represents and covenants that none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**SANCTIONS CONCERNS AND ANTI-CORRUPTION LAWS.** While the loan evidenced by the Note remains outstanding, (a) Borrower and any guarantor, each of their subsidiaries or affiliates, and their respective directors, officers, employees, or agents will not (i) be or become a Sanctioned Person, (ii) allow any of their assets to be located in a Sanctioned Country, or (iii) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country; and (b) no part of the proceeds of the loan evidenced by the Note will be used directly or indirectly (i) to fund or finance any operations, investments or activities in or make any payments to a (x) person that is, or is owned or controlled by, persons that are the subject of any Sanctions (as defined below) (each a "Sanctioned Person") or (y) country or territory that is the subject of Sanctions, or is owned or controlled by one or more Sanctioned Person (a "Sanctioned Country"), or in any other manner that would result in a violation of any Sanctions by any Person, or (ii) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption. Borrower further represents that Borrower and any guarantor, each of their subsidiaries or affiliates have conducted their business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977 and other applicable anti-corruption legislation in other jurisdictions, and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws. "Sanctions" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U.S. Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority.

**COUNTERPARTS; EXECUTION; ESIGNATURE.** This Note and any document executed in connection herewith may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be deemed one and the same instrument. This Note and any other documents to be delivered in connection herewith may be manually or, if approved by Lender, electronically signed, including signatures transmitted by telecopy, emailed PDF, or by any other electronic means that reproduces an image of an actual executed signature page. If electronically signed, to the fullest extent permitted by applicable law, including, without limitation, the Federal Electronic Signatures in Global and National Commerce Act, any state laws based on the Uniform Electronic Transactions Act, and the UCC (i) each electronic signature shall be of the same legal effect, validity, enforceability and admissibility as a manually executed signature, and (ii) the electronic matching of assignment terms, electronic contract formations on electronic platforms, and the keeping of records in electronic form all shall be of the same legal effect, validity, enforceability and admissibility as the use of a paper-based recordkeeping system. The words execution, execute, signed, signature and words of like import in this Note or any document executed in connection herewith shall include electronic signatures as contemplated in this paragraph. Nothing herein shall require Lender to accept electronic signatures in any form or format or through any electronic platform or service. Notwithstanding acceptance of any electronic signature by Lender, manually executed signatures shall be delivered promptly upon request by Lender.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral, or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made  The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
**SEBASTIAN S. ROBLES**

LaserPro Ver 23.4.10.021  Copr Finastra USA Corporation 1997, 2024  All Rights Reserved.  - TX L:\CFI\LPL\D20.FC TR-299574 PR-331

**Exhibit 13**

**TRUIST HH**

**WEALTH MANAGEMENT CREDIT LINE** AGREEMENT & INITIAL DISCLOSURE STATEMENT
(SECURED AND UNSECURED)
TRUIST BANK, 214 N Tryon St, Charlotte, NC 28202

| BORROWER(S) NAME | MAXIMUM CREDIT LIMIT | DATE | ACCOUNT NUMBER |
|---|---|---|---|
| SEBASTIAN S ROBLES | $ 3,000,000.00 | 07/25/2025 | ▉▉▉▉▉ |

The Annual Interest Rate is based on the Wall Street Journal

Prime Rate (the index) + ............................................... -1.573 %

The Initial **ANNUAL PERCENTAGE RATE** (index + margin) is .......... 5.927 %

The Minimum **ANNUAL PERCENTAGE RATE** is ............................ 1.00 %

The Initial Daily Periodic Rate is ................................. 0.01624 %

Other Charges: _____ $ _____

_____ $ _____

Security: I am giving a security interest in:
Cash Value Life Insurance

**Minimum Monthly Payment:**
The Minimum Monthly Payment required for each billing cycle will equal:

[X] Monthly Interest-Only Payments: The Finance Charges that accrued on the Outstanding Principal Balance during the preceding billing cycle, or $20.00, whichever is greater.

[ ] 1.50% Outstanding Principal Balance: 1.50% of the Outstanding Principal Balance, or $20.00, whichever is greater.

[ ] Fixed Payment Amount: A fixed payment of $_____, which amount must equal or exceed 1.50% of the Maximum Credit Limit.

**Minimum Quarterly Payment:**
The Minimum Payment required for each quarter will equal:

[ ] Quarterly Interest-Only Payments: The Finance Charges that accrued on the Outstanding Principal Balance during the preceding quarter, or $20.00, whichever is greater.

**Due Date:**
Payments will be due on or before the due date shown on my periodic statement.

**Maturity Date:**
If not sooner due and payable, the Outstanding Balance is due and payable in full no later than the end of the draw period.

**1. Definitions.** In this Agreement and Initial Disclosure Statement (hereafter "Agreement"):
(a) "I," "me," "we," "my," "our," "mine" and "us" mean each of and all of those who sign an application for credit under the Agreement.
(b) "You," "your," "yours" and "Bank" mean Truist Bank.
(c) "Advance" means any loan or extension of credit I obtain from you under this Agreement.
(d) "Credit Available" means the difference between my Outstanding Balance and the Maximum Credit Limit you approve for me from time to time.
(e) "Checks" mean special checks you issue me or any other means I use of drawing Advances under this Plan.
(f) "Maximum Credit Limit" means the total dollar amount you approve against which I may get Advances under this Plan.
(g) "Outstanding Balance" means the total balance I owe you from time to time under this Plan.
(h) "Outstanding Principal Balance" means the "Outstanding Balance" less any finance charges, fees or insurance charges.
(i) "Plan" means the Wealth Management Credit Line Plan established and governed by this Agreement.
(j) "Account" means the Account on your books that records the Advances I get from you and also all Finance and other charges you impose from time to time.
(k) "Billing Cycle" is the period beginning on the day after the closing date of my last monthly periodic statement and ending on the closing date of my next monthly periodic statement.
(l) "Daily Periodic Rate" means the rate of charge determined by dividing the applicable Annual Percentage Rate by the actual number of days in the year in which the determination is being made.

**2. Agreement.** You may establish in my name an Account for use by me to obtain loans of money (Advances) from time to time from you to be charged to my Account. The terms and conditions for use of the Account and for the repayment of any amount or amounts borrowed shall be according to this Agreement. I hereby acknowledge that I have received and read this Agreement and agree to all the terms and conditions included on the front and back hereof.
**3. Maximum Credit Limit.** My Maximum Credit Limit ("Limit") for this Account as established by you is that set forth in the heading of this Agreement. I agree never to allow my Outstanding Balance to exceed the Limit. At any time that my Outstanding Balance is in excess of my Limit, I agree upon your demand, to repay to you all amounts you have advanced in excess of my Credit Available.
**4. Agreement to Pay.** I agree to repay all my obligations under this Agreement including all finance and other charges that apply as set forth in this Agreement.
**5. Advances.** This Plan allows me to obtain credit extensions from you from time to time by requesting Advances within my Credit Available, using the special checks you issue to me. I also authorize the Bank to make Advances upon instruction of any individual using a correct account name, account number, and security code or other type of confidential identification number, or other information the Bank has on file about me, my Account or other authorized signer on my Account, and whether given orally, by telephone, in person, in writing, through ATMs, Phone Teller 24 or by call to a Truist branch. I acknowledge that the Bank has no method to determine whether a transaction conducted with the use of a valid account name, account number and security code or other information which the Bank has on file about me or my Account is proper and therefore authorize the Bank to complete any such transaction in which the Bank receives such identifying information. I may authorize an automatic

deposit in the actual amount needed to cover my overdrafts for the current business day (or the unused portion of the Credit Limit if less than actual amount needed to cover my overdrafts for the current business day) to any checking account I specify when the checking account is overdrawn (I will specify the Truist Checking Accounts to be used with my Account). I understand that any of these requests represent a request for an Advance when presented to you for payment or transfer. I may not request an Advance in excess of any Credit Available. The provisions of the Truist Bank Services Agreement are incorporated by reference in this Agreement. I acknowledge receipt of said Agreement.
**6. Crediting of Payments.** You will credit my payments on the date you receive them, except for payments of $5,000 or more. For these payments, you will delay crediting of payment for up to three (3) business days, but the delay will not result in a finance or other charge being imposed.
**7. Forged or Unauthorized Transactions. Duty to Safeguard Account.** I have a duty to safeguard access to my Account (including any credit accounts), account information, checks, signature stamps, account security codes, passwords, or personal identification numbers ("PIN") and personal identification (hereafter confidential information) and agree to keep same confidential. I agree to report any lost or stolen checks, any unauthorized transaction on my Account, or theft of confidential information immediately upon discovery. If I permit any person to have access to any place in which I store my checks, I agree that the failure to keep my checks locked and secure shall constitute negligence and the Bank shall not be responsible for any such checks that are subsequently stolen and forged. I agree to place a stop payment on any lost or stolen check if such item has

**Insurance Products are**
- Not a deposit or other obligations of, or guaranteed by Truist or its affiliates.
- Not insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States or by Truist or its affiliates.
- If applicable, there is investment risk associated with the insurance product, including the possible loss of value.

**Draft Authorization:** I authorize Truist to initiate electronic debits from Account # _____ at _____ ("Depository Bank") for the periodic payment due on the due date.

I hereby authorize the Depository Bank to honor electronic debits from my Account. I represent and warrant that funds in this Account are payable on my sole request and that sufficient funds will be available in the Account to cover all authorized debits. While it is in effect, this authorization applies to all periodic payments that may be due under the Agreement, except for the last payment, for which I will be billed.

This Draft Authorization will remain in effect until it is cancelled by me in writing at least three (3) business days prior to my payment due date. Truist reserves the right to cancel this Draft Authorization at any time and will notify me in writing of any such cancellation.

_____
Borrower's or Co-Borrower's Signature

**Overdraft Protection** - I request that the following Truist Checking Accounts be provided with automatic deposits to cover overdrafts. I understand that I will be individually liable for all Advances made to these Checking Accounts.

_____     _____     _____

HAVING FIRST READ THIS AGREEMENT ALONG WITH THE BANK SERVICES AGREEMENT, EACH OF THE UNDERSIGNED AGREES TO ALL THE TERMS AND CONDITIONS INCLUDED ON ALL PAGES HEREOF AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT AND THE BANK SERVICES AGREEMENT.

Borrower(s)    e-Signed by SEBASTIAN S ROBLES
on 07-25-2025 GMT

SEBASTIAN S ROBLES

**ACCOUNT# / NOTE#**
▉▉▉▉▉  07001



**1720TX** (2408)

Continued on Reverse Side

Exhibit 13

not already been paid. The Bank shall also not be responsible for paying any such item had I reported or stopped payment on in a timely manner. I agree to keep any account information, security code, password, PIN or personal identification used to access my deposit or credit Account(s) secure and strictly confidential and not to disclose such information to any other person. I must notify the Bank immediately if this information is lost or has become known to, or been used by, an unauthorized person. I acknowledge that the Bank has no method to determine whether a transaction conducted with use of a valid name, account number, and security code or personal identification was proper, and therefore authorize  the Bank to complete any transaction involving my Account made with the use of such information.  Subject to applicable law, I agree to be responsible for any transaction initiated with the use of a valid name, account number, security code, or personal identification, and agree that the Bank shall have no liability for any loss, claim or damage I sustain as a result of the use of my security code or personal information described above whether such transaction was authorized or not.  These rules apply to all checking, savings, or credit accounts in which a check, draft, or other access device may be used to withdraw or transfer funds.

**Duty to Review Account Statement.** I agree to review my account statement promptly upon receipt of the statement.  Because I am in the best position to discover an unauthorized signature or endorsement, a missing endorsement, any alterations or any counterfeit item, I agree to notify the Bank as provided in the Fair Credit Billing Act Disclosure set forth herein of any such occurrence. If I am absent from my account mailing address, I am responsible to make arrangements to have my statements reviewed for errors and timely report them.

**Duty of Care.** I agree that I will exercise ordinary care in handling my Account.  In exercising ordinary care, I shall have the duty to:  carefully examine my bank statements and enclosed items for fraudulent or unauthorized transactions and promptly notify the Bank of fraudulent or unauthorized transactions; timely reconcile my bank statement to detect any other account discrepancies including any missing or diverted deposits; conduct background checks on any individual who has authority to prepare my checks or reconcile my bank statements; independently review the work of any person who is responsible for reconciling my bank statement and preparing checks on a monthly basis; and comply with all other duties imposed on me under this Agreement or under applicable law.  My failure to exercise ordinary care or comply with its duties hereunder will constitute negligence and will preclude me from asserting against the Bank any unauthorized transaction on my Account. I acknowledge that the Bank processes its checks by automated means and is under no duty to examine each item presented for payment. I acknowledge that the Bank's signature verification procedure applies to all items presented for payment against my Account including checks or other withdrawal orders presented directly over the counter at any branch location. I agree that such automated check payment and notification procedure is commercially reasonable. I and the Bank, pursuant to applicable law, therefore agree that the Bank shall be deemed to have exercised ordinary care if it adheres to a standard of manual or mechanical examination of a random sampling of items being processed for payment. These items may represent a sampling or selection of items drawn on all accounts, or items which meet certain minimum criteria established by the Bank for manual or mechanical inspection (such as large amounts). The Bank shall be deemed to have acted in good faith and in accordance with reasonable commercial standards in paying any items forged or altered so cleverly (as by unauthorized use of a signature stamp, facsimile machine or otherwise) that the unauthorized signature, endorsement or alteration could not be detected by a reasonable person. The Bank's policies and procedures are general internal guidelines that do not establish a higher standard of care for the Bank than is otherwise established by the laws governing my Account. A clerical error or honest mistake will not be considered a failure of the Bank to perform any of its obligations. If the Bank waives any of its rights as to me or my Account on one or more occasions, it will not be considered a waiver of the Bank's rights on any other occasion.

**Limitation to File Claim.** To the extent permitted by applicable law, I agree that no legal proceeding or action may be commenced against the Bank to recover any amounts alleged to have been improperly paid out of the Account due to any unauthorized signature or endorsement, any alteration or any other fraudulent or unauthorized transaction unless: (i) I have timely provided the written notices as required above and (ii) such proceeding or action shall have been commenced within one year from the date the statement containing the unauthorized transaction was made available to me.

**Duty to Cooperate.** If I report any unauthorized transaction on my Account, I agree to cooperate with the Bank in its investigation of the claim. This includes preparing an affidavit or statement containing whatever information the Bank requires concerning the Account, the transaction and the circumstances surrounding the loss. I also agree to file a criminal report and testify against any suspected wrongdoer and waive any claims against the Bank if I fail to do so or if I enter into any settlement, compromise or restitution agreement with the wrongdoer without the consent of the Bank. The Bank may reverse any credit or reimbursement should I fail to file the criminal report or refuse to testify against the wrongdoer.

**Assignment of Insurance.** I agree to pursue all rights under any insurance policy I maintain before making a claim against the Bank in connection with any unauthorized banking transaction.  I agree to provide the Bank with all reasonable information about any insurance coverage, including the name of the insurance carrier, the policy number, policy limits and applicable deductibles. The Bank's liability, if any, will be reduced by the amount of any insurance proceeds I am entitled to receive. At the Bank's request, I agree to assign my rights under any insurance policy to the Bank.

**Limitation of Liability.** I agree that the Bank has a reasonable time to investigate the facts and circumstances surrounding any claimed loss and that the Bank has no obligation to provisionally credit my Account. The Bank's maximum liability is the lesser of actual damages proved or the amount of the unauthorized withdrawals, reduced by an amount which could not have been realized by the use of ordinary care. In no event will the Bank be liable for special or consequential damages, including attorneys' fees incurred by me. The Bank will not be liable for any items that are counterfeit, forged or altered in such a way that same could not be reasonably detected.

**8. Credit Investigation.** I authorize you at any time to make or have made whatever credit investigation you feel is appropriate in order to evaluate my credit, personal or financial standing, and/or employment, and I authorize you to provide such information as you deem necessary and proper to credit bureaus, creditors, and any others. I also consent to your obtaining a consumer credit report for the purpose of reviewing my Account, increasing the credit line, taking collection action on the Account or for other legitimate purposes associated with the Account.  When writing or calling about my Account, I will furnish my complete account number. For questions or inquiries about my Account, I may contact any Truist branch office. If I dispute the accuracy or completeness of any information supplied by Truist in a consumer report furnished by a consumer reporting agency I may write: Truist Bank, Credit Bureau Disputes, PO Box 849 Wilson, NC 27894.

**9. Finance Charge.** The Finance Charge on each Advance to my Account begins to accrue on the date of each such Advance. No time period exists within which any credit extended may be repaid without incurring a Finance Charge. There will be no Finance Charge imposed until an Advance is made on my Account. The Finance Charge is imposed so long as any part of the Outstanding Principal Balance remains unpaid. For each Billing Cycle, you will figure the Finance Charge on my Account by multiplying the Daily Periodic Rate by the "average daily balance" of my Account and then multiplying the product by the number of days in the Billing Cycle.  To get the "average daily balance", you will take the beginning balance of my Account each day, add any new Advances, and subtract any payments or credits. This will give you the daily balance.  Then, you will add up all the daily balances and divide them by the number of days in the Billing Cycle.  This will give you the "average daily balance".  I understand that the Daily Periodic Rate may vary from statement to statement based upon changes in the Annual Percentage Rate.  My Annual Percentage Rate is based on the highest ("Prime Rate") as published on the first business day of the month in the Money Rate Table in the Eastern Edition of the Wall Street Journal in which each Billing Cycle begins (the "Index"). To determine my Annual Percentage Rate, you may add a margin to the Index.  My Annual Percentage Rate will not be less than ___1.00___ % nor greater than  the usury ceiling provided in Tex. Fin. Code Sec. 303.006(c) as amended. I understand that the Annual Percentage Rate and the corresponding Daily Periodic Rate applicable to my Account will increase if the Prime Rate increases and will be reduced if the Prime Rate decreases subject to the maximum and minimum rates set out above. An increase in the Prime Rate will increase the amount of Finance Charges imposed on my Account.  Therefore, if I elect the interest-only Monthly Payment option or the interest-only Quarterly Payment option, an increase in the Prime Rate will cause a corresponding increase in my minimum monthly or quarterly payment. However, if I elect either the 1.50% of the Outstanding Principal Balance or the Fixed Payment Amount monthly minimum payment options, the effect of an increase in the Prime Rate will be to increase the amount of my final payment or to extend the number of payments necessary to pay my Account in full.

**10. Payment Terms.** This Account has a draw period of ___ONE (1)___ year(s) from the date of this Agreement, during which I may obtain Advances under the Plan. During the draw period you have assigned me one of the following four minimum payment options as is indicated in the heading of this Agreement: (a) monthly interest payments: under this option my payments will be due monthly and will equal the Finance Charges that accrued on the Outstanding Principal Balance during the preceding billing cycle, or $20.00, whichever is greater; or (b) quarterly interest-only payments: under this option, my payments will be due quarterly and will equal the finance charges that accrued on the Outstanding Principal Balance during the preceding quarter, or $20.00, whichever is greater; or (c) 1.50% of the Outstanding Principal Balance: under this option my payments will be due monthly and will equal 1.50% of the Outstanding Principal Balance, or $20.00, whichever is greater during the preceding billing cycle; or (d) fixed payment amount: under this option my payments will be due monthly and will equal the fixed payment amount I choose, which amount must equal or exceed 1.50% of the Maximum Credit Limit.

During the draw period, I may pay either the entire Outstanding Balance or less than the Outstanding Balance shown on my periodic statement unless the entire Outstanding Balance has become due.  When I do not pay the entire Outstanding Balance as shown on my periodic statement, I must pay at least the minimum payment as calculated in accordance with the draw period payment option designated in this Agreement.  At the end of the draw period, I must repay the Outstanding Balance as it exists as of the ending date of the draw period.

To the extent not otherwise prohibited by applicable law, my payments shall be applied first to accrued Finance Charges, then to the Outstanding Principal Balance, then to late charges, if any, and then to any other fees due hereunder.

During the draw period, you will bill me on a periodic basis on a date you select for all amounts I owe under the Plan. When I receive my periodic statement, I agree to examine it and immediately tell you about any charge or item I believe to be in error or subject to dispute. I have 60 days after the date you transmit the periodic statement to notify you in writing of any inaccuracies in it. If I fail to do so, the statement will be deemed to be accepted by me and correct.  I understand that the Fair Credit Billing Act Disclosure in this Agreement has more information about my rights and your responsibilities.

My payments will always cover the accrued finance charges. No negative amortization will occur.

I agree that you may renew or extend the draw period during which I may obtain credit advances or make payments. I further agree that you may renew or extend the plan.

**Bank shall not be obligated to accept any check, money order, or other payment instrument marked "payment in full" on any disputed amount due hereunder, and Bank expressly reserves the right to reject all such payment instruments. I agree that tender of my check or other payment instrument so marked will not satisfy or discharge my obligation under this Agreement, disputed or otherwise, even if such check or payment instrument is inadvertently processed by Bank unless in fact such payment is in fact sufficient to pay the amount due hereunder.**

**11. Security Agreement.** If my Account is secured, I have granted you a security interest in the property described in a separate security agreement. I agree to execute such other documents that you may request to perfect or continue your security interest.

**12. Late Charges.** If I don't make at least the minimum monthly payment within 10 days of the payment due date shown on my periodic statement I agree to pay you a late charge of 5% of the amount of the payment past due or $15.00, whichever is less.

**13. Returned Payment Fee.** I understand that you may charge and collect a processing fee of $30.00 for a check on which payment has been refused by the payor bank because of insufficient funds or because I did not have an account at that bank.

**14. Financial Updates.** I agree to provide you at all times with a current personal financial statement (not more than one year old) on a form approved by you and copies of my most recently-filed tax returns (no older than previous tax year) and with any other updates of my financial condition as requested by you within 15 days of your request.

**15. Freezing or Reducing The Account.** Notwithstanding any other provision of this Agreement and to the extent permitted by applicable law, you have the right to prohibit additional extensions of credit to me (freeze the Account) or to reduce my Maximum Credit Limit without notice.  If you freeze my Account or reduce my credit limit, I may request reinstatement of my credit privileges and I agree to furnish you with any information that you request to evaluate my request. I hereby acknowledge that the decision as to whether or not to reinstate my credit privileges shall be at your sole discretion.

I also understand that any one person obligated under this Agreement has a right to request that you not make future Advances on the Account, that such request must be made in writing and that you may honor such a request but are not required to do so.  In the event you honor such a request and all persons obligated under this Agreement make a written request for reinstatement of draw privileges, draw privileges will be reinstated on the Account unless draw privileges have been otherwise suspended or terminated and I hereby waive notice of such reinstatement of draw privileges.

**1720TX** (2408)

Exhibit 13

Page 6 of 8

**16. Termination; Payment in Full.** I will be in default of this Plan and Agreement if any of the following events occur:

(a) If I fail to comply with the minimum monthly payment or any other terms or conditions of this Agreement or of any other Agreement I may have with you.
(b) If I should die or become insolvent.
(c) If a petition should be filed or any other proceedings should be started under the Federal Bankruptcy Code or any State Insolvency statute by or against me.
(d) If a receiver should be appointed or a writ or order of attachment, levy or garnishment should be issued against me or any of my property, assets, or income.
(e) If I default under any pledge or security agreement executed in connection with this Agreement, any security I grant to secure payment under this Agreement substantially declines in value, or you should consider yourself or any debts under this Agreement insecure for any reason.
(f) If I fail to furnish you information sufficient to verify my identity as required under the USA Patriot Act.
(g) If there occurs any material adverse change in my financial condition or prospects or if you should believe, in good faith, that my chances of paying or performing my obligations under this Agreement have been significantly impaired.

If any of the above events of default should occur, the Outstanding Balance shall be accelerated and be immediately due and payable, without your notifying me, and your obligation to make further Advances shall, at your option and without notice, immediately end. Finance Charges shall accrue on the Outstanding Balance until it is paid. Either you or I may end this Agreement as to future Advances by giving written notice, but this termination will not relieve me of any of my obligations existing under this Agreement prior to its termination.

**17. Change of Terms.** You may amend this Agreement, from time to time without notice unless such notice is required by applicable law.

**18. Expiration Date.** Unless renewed or sooner terminated, my right to receive Advances under this Agreement will expire ____ONE (1)____ year(s) from the date this Agreement is executed. However, upon expiration of my right to receive Advances under this Agreement, I shall continue to be bound by this Agreement in that I am required to pay the balance of my Account in accordance with the terms of this Agreement and until paid, I will be liable for the Finance Charges imposed under this Agreement.

**19. Waiver.** I understand that if you fail to insist upon the strict performance of any provision or fail to enforce or exercise any of your rights under this Agreement, such failure shall not be construed or deemed to be, or be, a waiver for the future of any such provision or right. Although you may choose not to immediately and permanently terminate my Account and accelerate the balance, you retain the right to do so at later time if the condition allowing termination and acceleration continues to exist or exists at that time.

**20. Right of Setoff.** You have the right to deduct any money I owe for a minimum Periodic Payment more than 15 days past due or the entire unpaid Outstanding Balance (if the entire Outstanding Balance is due for any reason set forth in the Termination; Payment in Full paragraph) from any bank account I have at any of your offices or from any other money I have which is held by or due from you.

**21. Costs of Collection.** If you have to refer my Account to an attorney for purposes of collection, I agree to pay all of your collection expenses including reasonable attorneys' fees.

**22. Effective Date.** This Agreement will become fully effective as of the Date listed on page 1. I agree that consummation of the Agreement will have occurred in the State of Texas.

**23. Joint and Several Liability.** If more than one person signed the Application and/or this Agreement or otherwise is allowed to take part in this Plan, each person is both individually and jointly liable for all payments due under this Agreement and Plan.

**24. Governing Law.** I agree that this Agreement and my Account shall be governed by the laws of Texas and of the United States, and I submit to the jurisdiction of the Texas courts.

**25. Entire Agreement.** This Agreement sets forth the entire Agreement between the parties. Any prior conversations or writings are merged in this document and extinguished. No later amendment to this Agreement shall be binding unless such amendment is in writing and signed by each and every party to this Agreement, or you make a change as stated in the Change of Terms paragraph.

## FAIR CREDIT BILLING ACT DISCLOSURES

***My Billing Rights: Keep This Document For Future Use***
This notice tells me about my rights and your responsibilities under the Fair Credit Billing Act.

***What To Do If I Find A Mistake On My Statement***
If I think there is an error on my statement, I should write to you at:
Truist Bank
Loan Services
P.O. Box 2306
Wilson, NC 27894-2306

In my letter, I must give you the following information:
*Account information:* My name and account number.
*Dollar amount:* The dollar amount of the suspected error.
*Description of problem:* If I think there is an error on my bill, I must describe what I believe is wrong and why I believe it is a mistake.

I must contact you within 60 days after the error appeared on my statement.

I must notify you of any potential errors in writing. I may call you, but if I do you are not required to investigate any potential errors and I may have to pay the amount in question.

***What Will Happen After You Receive My Letter***
When you receive my letter, you must do two things:

1. Within 30 days of receiving my letter, you must tell me that you received my letter. You will also tell me if you have already corrected the error.

2. Within 90 days of receiving my letter, you must either correct the error or explain to me why you believe the bill is correct.

While you investigate whether or not there has been an error:
You cannot try to collect the amount in question, or report me as delinquent on that amount.
The charge in question may remain on my statement, and you may continue to charge me interest on that amount.
While I do not have to pay the amount in question, I am responsible for the remainder of my balance.
You can apply any unpaid amount against my credit limit.

After you finish my investigation, one of two things will happen:
*If you made a mistake:* I will not have to pay the amount in question or any interest or other fees related to that amount.
*If you do not believe there was a mistake:* I will have to pay the amount in question, along with applicable interest and fees. You will send me a statement of the amount I owe and the date payment is due. You may then report me as delinquent if I do not pay the amount you think I owe.

If I receive your explanation but still believe my bill is wrong, I must write to you within 10 days telling you that I still refuse to pay. If I do so, you cannot report me as delinquent without also reporting that I am questioning my bill. You must tell me the name of anyone to whom you reported me as delinquent, and you must let those organizations know when the matter has been settled between us.

If you do not follow all of the rules above, I do not have to pay the first $50 of the amount I question even if my bill is correct.

**1720TX** (2408)

Exhibit 13

OPEN-END CREDIT ACCOUNT OPENING DISCLOSURE
(WEALTH MANAGEMENT CREDIT LINE)

| Interest Rate and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Cash Advances | <u>    5.927    </u>%<br>The APR will vary with the market based on the Prime Rate. |
| Paying Interest | I will be charged interest from the transaction date. |

| Fees | |
|---|---|
| Annual Fee | $0 |
| Penalty Fees<br>● Late Payment | 5% of the amount of the payment past due or $15.00 whichever is less |
| ● Returned Payment | $30.00 |

**How You Will Calculate My Balance:** You use a method called "average daily balance (including new transactions)."  See the Wealth Management Credit Line Agreement & Initial Disclosure Statement for more details.

**Billing Rights:**  Information on my rights to dispute transactions and how to exercise those rights is provided in my Wealth Management Credit Line Agreement & Initial Disclosure Statement.

**1720TX** (2408)

Exhibit 13